**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | |
|---|---|
| MIKE HALDEMAN, individually, and <br> on behalf of all others similarly situated, )<br> )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br> INSPIRE BRANDS, INC. d/b/a )<br> SONIC DRIVE-IN, )<br> )<br> Serve registered agent at: )<br> Corporation Service Company )<br> 2 Sun Court, Suite 400 )<br> Peachtree Corners, Georgia 30092 )<br> )<br> Defendant. ) | Case No.:  1:22CV-155-GNS <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

COMES NOW Plaintiff Mike Haldeman, individually, and on behalf of all others similarly

situated, and for his Class Action Complaint against Defendant Inspire Brands, Inc. d/b/a Sonic

Drive-In, states:

**BACKGROUND, PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Mike Haldeman ("Haldeman") brings this case to protect the privacy rights

of himself and a class of similarly situated people who were sent text messages on their phones by

Inspire Brands, Inc. d/b/a Sonic Drive-In ("Sonic"). Sonic repeatedly sent text messages to

Haldeman and the putative class members after Haldeman and the putative class members

expressly requested that Sonic stop texting them.

2.      In the early 1990s, Congress enacted the Telephone Consumer Protection Act

("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted

telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3.      The TCPA affords special protections for people who request that they be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4.      In 2022 alone, approximately 36.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited October 25, 2022). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

5.      Haldeman is an individual who resides in Bowling Green, Kentucky and is a citizen of the State of Kentucky.

6.      Haldeman brings this action on behalf of himself and all others similarly situated.

7.      Inspire Brands, Inc. d/b/a Sonic Drive-In ("Sonic") is a Delaware corporation that is headquartered in the State of Georgia. Inspire Brands, Inc. owns a number of restaurants including Sonic, Arby's, Baskin Robbins, Dunkin' and Jimmy John's.

8.      Sonic transacts business in Kentucky and throughout the United States.

2

9.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 as this case presents a federal question under the TCPA.

10.     This Court has personal jurisdiction over Sonic because Sonic solicits business in the State of Kentucky, conducts business in the State of Kentucky, and Sonic otherwise has sufficient minimum contacts with the State of Kentucky, and such contacts are continuous and systematic.

11.     Venue is proper in this Court under 28 U.S.C. § 1391 as a substantial part of the events giving rise to Haldeman's claims occurred within this judicial district

## SONIC'S TEXT MESSAGE MARKETING

12.     Sonic is in the drive-in fast food restaurant business. Sonic sells burgers, hot dogs, soft drinks and other food and drink items.

13.     Sonic markets its business, in part, through sending text message advertisements to consumers' cell phones.

14.     Haldeman is the owner of a cell phone. His phone number is 270-XXX-8431.

15.     Haldeman's phone is a residential line that is used for personal purposes.  The line is used primarily for communicating with family members and paying personal bills.

16.     Haldeman's cell phone account is held in his personal name.

17.     Haldeman never provided his cell phone number to Sonic.

18.     Haldeman never provided prior express written consent to be contacted on his cell phone by Sonic.

19.     On or about August 22, 2022, at approximately 5:58 a.m., Haldeman received a marketing text message from Sonic, stating:

Get early access to the NEW Chophouse Cheeseburger . . .

Need help or want to stop receiving deals? Reply with HELP or STOP to unsubscribe.

20.    On or about August 22, 2022, Haldeman replied to the text message, "STOP."

21.    After August 22, 2022, and before September 1, 2022, received a marketing text message from Sonic, stating, in part:

. . . today only: Small Mozzarella Sticks! Must mention @ part drive-ins. Deal auto-applies in the app 9/1. Lmt 5. +tax Txt STOP to end

22.    On or about September 1, 2022, Haldeman replied to the text message, "STOP."

23.    On or about October 5, 2022, Haldeman received another marketing text message from Sonic, stating:

Calling all pup parents! Visit the SONIC Wag Shop to get your doggo drive-in-ready with a new bandana, dog toy or costume!

Rewarding your fave co-pilot? Treat your best friend to a free wag cup Treat your pup to toys. . . .

24.    On October 5, 2022, Haldeman again replied to the text message, "STOP."

25.    On October 14, 2022, Haldeman received another marketing text message from Sonic, stating:

TODAY ONLY: $0.99 Small Mozzarella Sticks at SONIC! Deal auto-applies in the app & at participating drive-ins 10/13. Limit 5. + Tax. Txt STOP to end

26.    On or about October 17, 2022, Haldeman again replied to the text message, "STOP."

27.    On or about October 20, 2022, Haldeman received another marketing text message from Sonic, stating:

> SONIC: Treat yourself to $0.99 Sundaes today! Must mention @
> participating drive-ins. Deal auto-applies in the app 10/20. Limit 5. + tax.
> Txt STOP to end

28.     On or about October 20, 2022, Haldeman again replied top the text message,
"STOP."

29.     On or about October 31, 2022, Haldeman received another text message from
Sonic, stating:

> A Halloween scary good deal 50 cent corn dogs at Sonic. Deal auto-applies
> in the app at participating drive ins 10/31. + tax. Txt STOP to end.

30.     On or about October 31, 2022, Haldeman again replied top the text message,
"STOP."

31.     Haldeman also replied "stop" to Sonic multiple times before August 22, 2022, after
receiving unwanted text messages from Sonic.

32.     Haldeman also called Sonic's corporate office in or around August 2022 and
requested that Sonic stop sending him text messages.

33.     Each of the text messages Haldeman received on his cell phone appear to have
originated from short code 876642.

34.     On information and belief, short code 876642 is a short code that was registered by
or on behalf of Sonic.

35.     Sonic's conduct violated the privacy rights of Haldeman and the putative class
members, as they were subjected to annoying and harassing calls. Sonic's text messages intruded
upon the rights of Haldeman and the putative class members to be free from invasion of their
interest in seclusion.

36.     Sonic's conduct caused Haldeman and the putative class members to waste time
addressing and/or otherwise responding to the unwanted text messages.

37.     On information and belief, Sonic sent text messages to Haldeman and the putative class members for the purpose of selling its products.

## Class Allegations

38.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Haldeman brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of Rules 23(a), (b)(2) and (b)(3).

39.     Haldeman seeks to represent the following class:

> All persons in the United States who from four years prior to the filing of this action through class certification to whom: (1) Sonic sent text messages marketing its products, (2) Sonic sent more than one text message to the person in a twelve-month period, (3) after the person requested that Sonic stop sending them text messages.

40.     Haldeman reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

41.     The members of the proposed classes are so numerous that joinder of all members is impracticable. Haldeman reasonably believes that hundreds or thousands of people have been harmed by Sonic's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Sonic or those acting on its behalf.

42.     Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

43.     On information and belief, Sonic has texted and continues to text people who have requested that Sonic stop texting them, i.e., to be placed on Sonic's internal do not call list by texting Sonic, "STOP." It is reasonable to expect that Sonic will continue to send such text messages absent this lawsuit.

44.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.     Whether Sonic sent text messages to Haldeman and the putative class members after they requested that Sonic no longer send them text messages;

b.     Whether Sonic's conduct violates 47 U.S.C. § 227(c);

c.     Whether Sonic's conduct violates the rules and regulations implementing the TCPA; and,

d.     Whether Haldeman and the putative class members are entitled to increased damages for each violation based on the willfulness of Sonic's conduct.

45.     Haldeman's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

46.      Haldeman and his counsel will fairly and adequately protect the interests of the members of the proposed class. Haldeman's interests do not conflict with the interests of the proposed class he seeks to represent. Haldeman has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

47.     Haldeman's counsel will vigorously litigate this case as a class action, and Haldeman and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

48.     A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual

claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

49.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

50.    Questions of law and fact, particularly the propriety of sending text messages to persons who requested that Sonic no longer text them, i.e., to place them on Sonic's internal do not call list, predominate over questions affecting only individual members.

51.    Sonic has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

### Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

52.    Haldeman incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

53.    The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

54.    The regulations prescribed under Section 227(c) require companies like Sonic, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not

to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

55.    These procedures must meet several minimum standards, including, but not limited to:

**(1)** ***Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

**(2)** ***Training of personnel engaged in telemarketing.*** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)** ***Recording, disclosure of do-not-call requests.*** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

**(4)** ***Identification of sellers and telemarketers.*** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** ***Affiliated persons or entities.*** In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

9

**(6)** ***Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

56.    Sonic failed to maintain and/or implement these minimum standards by repeatedly sending text messages to Haldeman and the putative class members after Haldeman and the putative class members requested that Sonic stop sending them text messages.

57.    In addition, the TCPA allows the Court to enjoin Sonic's violations of the TCPA's regulations prohibiting calls to phone numbers that should have been placed on Sonic's internal do not call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

58.    By sending text messages to the phones of Haldeman and the putative class members after their numbers should have been placed on Sonic's internal do not call list, Sonic violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

59.    Sonic knew or should have known that Haldeman and the putative class members did not wish to receive text messages as such persons expressly advised Sonic that they did not wish to receive text messages from Sonic.

60.    Haldeman and the putative class members are entitled to damages of $500.00 per violation for each text message sent by Sonic in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Sonic willfully violated the TCPA.

## Demand for Judgment

WHEREFORE Plaintiff Mike Haldeman, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a.    Enter an order against Defendant Inspire Brands, Inc. d/b/a Sonic Drive-In,

pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Haldeman as the class representative;

        b.        Enter an order appointing Erik Peterson Law Offices, PSC and Butsch Roberts & Associates LLC as counsel for the class;

        c.        Enter judgment in favor of Haldeman and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of the TCPA, or up to $1,500 per violation of the TCPA if Sonic willfully violated the TCPA;

        d.        Enter a judgment in favor of Haldeman and the putative class that enjoins Sonic from violating the TCPA's regulations prohibiting Sonic from sending text messages to persons who have requested that Sonic stop texting them;

        e.        Award Haldeman and the class all expenses of this action, and require that Sonic pay the costs and expenses of class notice and administration; and,

        f.        Award Haldeman and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Mike Haldeman demands a jury trial in this case.

_s/ Erik D. Peterson_
**ERIK PETERSON LAW OFFICES, PSC**
249 E. Main Street
Suite 150
Lexington, KY 40507
Telephone: 800-614-1957
Email: erik@eplo.law


**BUTSCH ROBERTS & ASSOCIATES LLC**

Christopher E. Roberts (_pro hac_ to be filed)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Phone: (314) 863-5700
Fax: (314) 863-5711
CRoberts@butschroberts.com